JS-6 O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOWARD ITEN, | ) | Case No. CV 21-00486 DDP (JEMx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER GRANTING DEFENDANT'S MOTION** |
| | ) | **TO DISMISS FIRST AMENDED** |
| COUNTY OF LOS ANGELES, | ) | **COMPLAINT** |
| | ) | |
| Defendant. | ) | [Dkt. 33] |
| _____ | ) | |

Presently before the court is Defendant County of Los Angeles ("the County")'s Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I.   Background**

Plaintiff Howard Iten is part-owner of a commercially zoned property in the County of Los Angeles. (FAC ¶ 8.) Beginning in March 2020, the County imposed a moratorium on commercial tenant evictions for nonpayment of rent related to the COVID-19 global

pandemic ("the Moratorium").[1] (Id. ¶¶ 9, 18.) The Moratorium prohibited the eviction of a commercial tenant for nonpayment of rent or late fees "if the Tenant demonstrates an inability to pay rent and/or such related charges due to Financial Impacts related to COVID-19 . . . and the Tenant has provided notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay." (FAC Ex. 1 (Moratorium § V(A)(1)).) Commercial tenants with fewer than ten employees could satisfy these notice requirements with a self-certification. (Moratorium § V(B)(2)(a).) Such tenants have twelve months from the expiration of the Moratorium to repay any unpaid rent.[2] (FAC ¶ 31; Moratorium § V(C)(2)(a).) The Moratorium also prohibits harassment of tenants, including any attempt to evict a tenant "based upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the Landlord."[3] (Moratorium § VIII(I).) Failure to comply with the Moratorium can result in civil penalties, including fines of up to $5,000 per day, and is punishable as a misdemeanor. (Moratorium § X(A),(B).)

Plaintiff has "had a number of issues" with his commercial tenant over the past several years, including failure to pay rent

---

[1] The term "tenant" excludes commercial tenants "that are multi-national, publicly-traded, or have more than 100 employees." (Declaration of Kathryn D. Valois, Ex. A at § 3(a).)

[2] The Moratorium expired as to commercial tenants on January 31, 2022.

[3] No Landlord is liable for harassment for pursuing eviction "unless and until the Tenant has obtained a favorable termination of that action." (Moratorium § VIII(I).)

2

and unauthorized alterations to the property, resulting in building code violations. (FAC ¶ 23.) In April 2020, the tenant informed Plaintiff that the tenant "is very adversely affected by Covid 19 and . . . will not be able to pay the rent." (Id.) Plaintiff's tenant did not pay rent for the next several months. (Id.)

The tenant's lease expired at the end of August 2020. (FAC ¶ 24.) Notwithstanding the tenant's nonpayment of rent and the other "issues," Plaintiff entered into a new, five-year lease with the tenant, reasoning that so doing would increase the chances that Plaintiff would recover past-due rent. (Id.) The new lease requires the tenant to pay both base rent and $3,200 in past-due rent every month. (FAC ¶ 26.) Although the new lease went into effect on September 1, 2020, the tenant has not made any timely rent payments, and is over $30,000 in arrears. (FAC ¶ 28.) Sometime in October 2020, the tenant conveyed to Plaintiff that "times are tough and [the tenant] will not be able to pay the full amount on time." (Id. ¶ 29.)

This suit followed. Plaintiff's FAC brings a single cause of action alleging that the Moratorium's ban on commercial evictions violates Plaintiff's rights under the Constitution's Contracts Clause. Defendant now moves to dismiss the FAC.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and

3

must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (internal quotation marks and alteration omitted); see also Wilson v. Lynch, 835 F.3d 1083, 1090 n.2 (9th Cir. 2016) ("[W]e have an independent obligation to

4

examine jurisdictional issues such as standing sua sponte." (internal quotation marks and alteration omitted)). As explained in this Court's prior Order, "[s]tanding under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural nor hypothetical; (2) causation, such that a causal connection between the alleged injury and offensive conduct is established; and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. <u>Nat'l Fed'n of the Blind of California v. Uber Techs., Inc.</u>, 103 F. Supp. 3d 1073, 1078 (N.D. Cal. 2015) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)). Here, if the Moratorium does not prevent Plaintiff from evicting his tenant, then as a matter of course, the Moratorium cannot have caused Plaintiff any injury, and he lacks standing to bring suit.

This Court dismissed Plaintiff's original Complaint for lack of standing, with leave to amend. (Dkt. 31). The Complaint, like the FAC, brought a single cause of action alleging that the Moratorium's ban on commercial evictions violates Plaintiff's rights under the Constitution's Contracts Clause.[4] As the court explained, there was no allegation that Plaintiff's tenant gave timely notice of his inability to pay rent, nor that any specifically identified extenuating circumstances excused the tenant's failure to give notice. (Dkt. 31 at 7.) Under those facts, the Moratorium's protections did not apply to Plaintiff's tenant, and Plaintiff therefore could not allege that the Moratorium caused him any injury.

---

[4] " No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1.

5

Plaintiff's FAC acknowledges that the tenant "has not provided timely monthly notice of the inability to meet the lease's payments terms because of a qualifying COVID-related reason, as generally required under the County's eviction moratorium." (FAC ¶ 30.) Plaintiff now alleges the following:

> [Plaintiff']s property management company contacted the Tenant to inquire as to the reason for the Tenant's failure to provide monthly notices and whether extenuating circumstances exist to excuse that failure. The Tenant responded that it is "my understanding that such notice was provided while negotiating the lease already and is not on [a] month to month basis." He elaborated that "[t]hose laws and regulations and notices you mentioned . . . do give me relie[f] so I don't stress my other businesses and carry the rent as unpaid." Thus, the "answer to your question" about whether extenuating circumstances exist "is Yes." The Tenant also informed the property management company that he "won't be able to make October rent."

Id. Plaintiff's somewhat tortured recitation of his tenant's statements does not sufficiently allege that the tenant has complied with or is exempt from the Moratorium's notice provisions or, thus, that the Moratorium's protections apply to the tenant. At best, Plaintiff's representative asked the tenant the equivalent of, "Do extenuating circumstances excuse your failure to give timely notice?" And, at best, the tenant responded, "The answer to your question is yes." This vague, conclusory exchange cannot serve as the basis for Plaintiff's standing or this court's jurisdiction. Although the Moratorium does not itself define "extenuating circumstances," there can be little doubt that mere recitation of those magic words is insufficient to invoke the Moratorium's protections or to exempt tenants from the modest

6

1 requirement that they self-certify a COVID-related inability to pay
2 rent within seven days after the rent is due.[5]
3     Plaintiff, in essence, once again asks this Court to assume
4 some unpleaded fact that qualifies as an "extenuating
5 circumstance."  But even assuming that Plaintiff had alleged that
6 the tenant said, "Extenuating circumstances prevented me from
7 giving notice," the tenant's bare-bones assertion alone would not
8 support the inference that such circumstances exist.  See <u>Keen v.
9 Am. Home Mortg. Servicing, Inc.</u>, 664 F. Supp. 2d 1086, 1092 (E.D.
10 Cal. 2009) (internal quotation marks and citations omitted) (citing
11 <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
12 Carpenters</u>, 459 U.S. 519, 526 (1983); <u>Retail Clerks Int'l Ass'n v.
13 Schermerhorn</u>, 373 U.S. 746, 753 n. 6 (1963).  In short, Plaintiff
14 has not alleged <u>facts</u> to support the contention that the
15 Moratorium's protections apply to Plaintiff's tenant.
16     At oral argument, Plaintiff raised the additional argument
17 that the tenant's "good faith mistake of law" regarding the
18 Moratorium's notice requirement constitutes an "extenuating
19 circumstance," obviating the need for the tenant to give adequate
20 notice.  The Moratorium requires "notice to the Landlord within
21 seven (7) days after the date that rent . . . w[as] due."
22 Plaintiff's mistake of law argument focuses on the tenant's
23 statement that "my understanding [is] that such notice was provided
24 while negotiating the lease already and is not on [a] month to
25 month basis."  As an initial matter, the FAC does not specifically

---

[5] Because notice must be given within seven days after the rent becomes due, the tenant here could not possibly have prospectively given notice while negotiating the terms of his new lease.

7

allege that the tenant gave any notice during the lease re-negotiation process of any COVID-related inability to pay rent. Furthermore, and more fundamentally, the Moratorium requires notice with seven days after the rent was due. Even assuming that Plaintiff could allege that the tenant did inform him during lease negotiations of a COVID-related inability to pay rent, the provision of such notice <u>prior to signing a five-year lease</u> cannot reasonably be read to satisfy the tenant's ongoing, indefinite, and relatively minimal burden to certify that COVID-19 was continuing to affect his ability to pay rent. As explained in this Court's prior Order, the court agrees with the "well-accepted principle that remedial legislation . . . is to be given a liberal construction consistent with [its] overriding purpose . . . ." <u>United States v. Article of Drug . . . Bacto-Unidisk . . .</u>, 394 U.S. 784, 798 (1969). Plaintiff's reading of the term "extenuating circumstances," however, would encompass any unreasonable mistake of law, so long as the error was made in "good faith." Even assuming that landlords such as Plaintiff are in any position to gauge the sincerity of their tenants' beliefs, such a reading of "extenuating circumstances" is so broad as to render the Moratorium's notice provision almost meaningless.

    The court is mindful that the Moratorium includes prescriptions against tenant harassment, including certain attempts to terminate tenancies. Such attempts are only improper, however, if premised "upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord." (Moratorium ¶ VIII (I).) If Plaintiff were aware of facts establishing that extenuating

8

circumstances prevented his tenant from providing timely notice, Plaintiff presumably would have, and certainly should have, alleged those facts here.[6] Absent any such facts, however, Plaintiff has not adequately alleged that the Moratorium affects him in any way.

Plaintiff has not alleged an injury in fact, and therefore lacks standing. Accordingly, this Court lacks jurisdiction over this matter.

**IV. Conclusion**

For the reasons stated above, the County's Motion to Dismiss is GRANTED.[7] Plaintiff's Complaint is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: April 15, 2022

DEAN D. PREGERSON
United States District Judge

---

[6] This Court, of course, takes no position on whether the tenant would be able to show, in some other proceeding, that extenuating circumstances prevented him from providing Plaintiff with timely notice. The facts alleged here, however, do not establish any such circumstances, or Plaintiff's knowledge of them.

[7] Having dismissed for lack of jurisdiction, this Court does not reach Defendant's constitutional arguments.

9