O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HOWARD ITEN,                     )   Case No. CV 21-00486 DDP (JEMx)
                                 )
               Plaintiff,        )
                                 )
     v.                          )   **ORDER GRANTING DEFENDANT'S MOTION**
                                 )   **TO DISMISS FIRST AMENDED**
COUNTY OF LOS ANGELES,           )   **COMPLAINT**
                                 )
               Defendant.        )   [Dkt. 33]        [JS-6]
_____  )

Presently before the court for further consideration is Defendant County of Los Angeles ("the County")'s Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (Dkt. 33). Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

## I.  Background

As described in this Court's prior Order (Dkt. 44), Plaintiff Howard Iten is part-owner of a commercially zoned property in the City of Lawndale, in Los Angeles county. (FAC ¶ 8.) Beginning in March 2020, the County imposed a moratorium on commercial tenant evictions for nonpayment of rent related to the COVID-19 global pandemic ("the Moratorium").[1][2] (Id. ¶¶ 9, 18.) The Moratorium prohibited the eviction of a commercial tenant for nonpayment of rent or late fees "if the Tenant demonstrates an inability to pay rent and/or such related charges due to Financial Impacts related to COVID-19 . . . and the Tenant has provided notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay." (FAC Ex. 1 (Moratorium § V(A)(1)).) Commercial tenants with fewer than ten employees could satisfy these notice requirements with a self-certification. (Moratorium § V(B)(2)(a).) Such tenants had twelve months from the

---

[1] The term "tenant" excludes commercial tenants "that are multi-national, publicly-traded, or have more than 100 employees." (Declaration of Kathryn D. Valois (Dkt. 24-1), Ex. A at § 3(a).)

[2] Although initially applicable only in unincorporated areas of Los Angeles County, the Moratorium was extended as a "baseline for all incorporated cities" on September 1, 2020, the same day Plaintiff's lease was allegedly executed. (FAC Ex. 1 at 4.)

expiration of the Moratorium to repay any unpaid rent.[3]  (FAC ¶ 31; Moratorium § V(C)(2)(a).)  The Moratorium also prohibited harassment of tenants, including any attempt to evict a tenant "based upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the Landlord."[4]  (Moratorium § VIII(I).)  Failure to comply with the Moratorium could result in civil penalties, including fines of up to $5,000 per day, and was punishable as a misdemeanor.  (Moratorium § X(A),(B).)

Plaintiff "had a number of issues" with his commercial tenant since 2015, including failure to pay rent and unauthorized alterations to the property, resulting in building code violations.  (FAC ¶ 23.)  In April 2020, the tenant informed Plaintiff that the tenant "is very adversely affected by Covid 19 and . . . will not be able to pay the rent."  (Id.)  Plaintiff's tenant did not pay rent for the next several months.  (Id.)

The tenant's lease expired at the end of August 2020.  (FAC ¶ 24.)  Notwithstanding the tenant's nonpayment of rent and the other "issues," Plaintiff entered into a new five-year lease with the tenant, reasoning that so doing would increase the chances that Plaintiff would recover past-due rent.  (Id.)  The new lease required the tenant to pay both base rent and $3,200 in past-due rent every month.  (FAC ¶ 26.)  Although the new lease went into effect on September 1, 2020, sometime in October the tenant

---

[3] The Moratorium expired as to commercial tenants on January 31, 2022.

[4] No Landlord is liable for harassment for pursuing eviction "unless and until the Tenant has obtained a favorable termination of that action."  (Moratorium § VIII(I).)

1  conveyed to Plaintiff that "times are tough and [the tenant] will
2  not be able to pay the full amount on time."  (Id. ¶¶ 25, 29.)  By
3  the end of September 2021, the tenant was over $30,000 in arrears.
4  (Id. ¶ 28.)

5      This suit followed.  Plaintiff's FAC brings a single cause of
6  action alleging that the Moratorium's ban on commercial evictions
7  violated Plaintiff's rights under the Contracts Clause of the
8  United States Constitution.  Defendant now moves to dismiss the
9  FAC.

10

11

12 **II.  Legal Standard**

13      A complaint will survive a motion to dismiss when it
14 "contain[s] sufficient factual matter, accepted as true, to state a
15 claim to relief that is plausible on its face." Ashcroft v. Iqbal,
16 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550
17 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a
18 court must "accept as true all allegations of material fact and
19 must construe those facts in the light most favorable to the
20 plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).
21 Although a complaint need not include "detailed factual
22 allegations," it must offer "more than an unadorned,
23 the-defendant-unlawfully-harmed-me accusation." Iqbal,556 U.S. at
24 678.  Conclusory allegations or allegations that are no more than a
25 statement of a legal conclusion "are not entitled to the assumption
26 of truth." Id. at 679. In other words, a pleading that merely
27 offers "labels and conclusions," a "formulaic recitation of the
28 elements," or "naked assertions" will not be sufficient to state a

4

1  claim upon which relief can be granted. Id. at 678 (citations and

2  internal quotation marks omitted).

3      "When there are well-pleaded factual allegations, a court

4  should assume their veracity and then determine whether they

5  plausibly give rise to an entitlement of relief." Iqbal,556 U.S.

6  at 679.  Plaintiffs must allege "plausible grounds to infer" that

7  their claims rise "above the speculative level." Twombly, 550 U.S.

8  at 555-56.  "Determining whether a complaint states a plausible

9  claim for relief" is "a context-specific task that requires the

10 reviewing court to draw on its judicial experience and common

11 sense." Iqbal, 556 U.S. at 679.

12 **III. Discussion**

13      The Contracts Clause proscribes "any . . . Law impairing the

14 Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.  As this

15 Court has explained,

16      Although this language "is facially absolute, its
       prohibition must be accommodated to the inherent police
17     power of the State to safeguard the vital interests of its
       people." Energy Reserves Grp., Inc. v. Kansas Power &
18     Light Co., 459 U.S. 400, 410, 103 (1983) (internal
       quotation marks omitted).  "The constitutional question
19     presented in the light of an emergency is whether the power
       possessed embraces the particular exercise of it in
20     response to particular conditions." Home Bldg. & Loan
       Ass'n v. Blaisdell, 290 U.S. 398, 426(1934).
21

22 Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles,

23 500 F. Supp. 3d 1088, 1094 (C.D. Cal. 2020), aff'd, 10 F.4th 905

24 (9th Cir. 2021).  To answer this constitutional question, courts

25 employ a two-step test that looks first, as a threshold issue, to

26 whether the law in question has "operated as a substantial

27 impairment of a contractual relationship." Sveen v. Melin, 584

28 U.S. 811, 819 (2018) (quoting Allied Structural Steel Co. v.

5

1   <u>Spannaus</u>, 438 U.S. 234, 244 (1978)); <u>see also</u> <u>Apartment Ass'n</u>, 10

2   F.4th at 913.  If so, "the inquiry turns to the means and ends of

3   the legislation," or "whether the state law is drawn in an

4   'appropriate' and 'reasonable' way to advance 'a significant and

5   legitimate public purpose.'" <u>Sveen</u>, 548 U.S. at 819 (quoting

6   <u>Energy Reserves Group, Inc. v. Kansas Power & Light Co.</u>, 459 U.S.

7   400, 411-412 (1983).  Where there is no substantial impairment of a

8   pre-existing contractual relationship, however, the inquiry may

9   conclude after step one.  <u>Sveen</u>, 584 U.S. at 819; <u>see also</u> <u>Allied</u>

10  <u>Structural Steel</u>, 438 U.S. at 244-45.

11       In determining whether a law interferes with a contractual

12  relationship, courts look to "the extent to which the law

13  undermines the contractual bargain, interferes with a party's

14  reasonable expectations, and prevents the party from safeguarding

15  or reinstating his rights." <u>Sveen</u>, 584 U.S. at 819; <u>see also</u>

16  <u>Apartment Ass'n</u>, 10 F.4th at 913.  In <u>Apartment Association</u>, this

17  Court analyzed an eviction moratorium, similar to that at issue

18  here, implemented by the City of Los Angeles with respect to

19  residential tenancies.  <u>Apartment Ass'n</u>, 500 F. Supp. 3d at  1092.

20  The court recognized that several other courts examining similar

21  moratoria looked to the extensive history of governmental

22  regulation of residential landlord-tenant relationships to conclude

23  that additional regulations in the form of eviction moratoria were

24  "relatively minor alterations to existing regulatory frameworks,"

25  and therefore did not interfere with landlords' reasonable

26  expectations or, therefore, substantially impair existing

27  contractual relationships.  <u>Id.</u> at 1095-96 (citing, for example,

28  <u>HAPCO v. City of Philadelphia</u>, 482 F.Supp.3d 337, 351-53 (E.D. Pa.

2020); <u>Auracle Homes, LLC v. Lamont</u>, 478 F.Supp.3d 199, 224-25 (D. Conn. 2020); and <u>Elmsford Apt. Assocs., LLC v. Cuomo</u>, 469 F.Supp.3d 148, 155-56 (S.D.N.Y. 2020).); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>S. California Rental Hous. Ass'n v. Cnty. of San Diego</u>, 550 F. Supp. 3d 853, 862 (S.D. Cal. 2021).

This Court respectfully disagreed with that rationale, observing that "the scope and nature of the COVID-19 pandemic, and of the public health measures necessary to combat it, have no precedent in the modern era, and that no amount of prior regulation could have led landlords to expect anything like" the city's residential moratorium. <u>Id.</u> at 1096. Similarly, although the city ordinance there at issue, like the Moratorium here, did not prevent landlords from seeking to recover unpaid rent and only temporarily limited landlords' ability to pursue evictions, this Court observed that the effects of the city moratorium "were, at least in terms of degree, unforeseeable."[5] <u>Id.</u>

Plaintiff here makes essentially the same argument, and indeed cites to this Court's <u>Apartment Association</u> decision repeatedly for support. (Supplemental Opposition at 5-6.) The circumstances here, however, are distinguishable from those in <u>Apartment Association</u>. As an initial matter, it is not clear whether the contractual relationship at issue here predated the extension of the County Moratorium to Plaintiff's property. It is undisputed that the County extended the Moratorium to incorporated areas of

---

[5] The Court of Appeals did not reach the substantial impairment issue because, even assuming the city's eviction moratorium substantially impaired a contractual relationship, the moratorium satisfied the second,"appropriate and reasonable" prong of the Contracts Clause analysis. <u>Apartment Ass'n</u> 10 F.4th at 913.

1   Los Angeles County effective September 1, 2020.  Although the FAC
2   alleges that Plaintiff's new lease with his tenant also "commenced
3   September 1, 2020," Plaintiff asserts in opposition to the instant
4   motion that the Moratorium was extended "only *after* the new lease
5   had been signed by the tenant."  (Supp. Opp. at 2:7 (emphasis
6   original)).  Plaintiff elsewhere contends that he "had already
7   negotiated the new lease" by the time the Los Angeles County Board
8   of Supervisors extended the Moratorium on September 1.  (Supp. Opp.
9   at 8:7).  Notwithstanding this lack of clarity, the court will
10  assume for the purposes of this motion that Plaintiff executed the
11  contract shortly before the Moratorium was extended to apply to
12  Plaintiff.

13       Even assuming, however, that Plaintiff's contract predated the
14  Moratorium, Plaintiff's position is not comparable to that of the
15  residential landlords in Apartment Association.  The city
16  moratorium at issue there was enacted in March 2020, during the
17  earliest days of the COVID-19 pandemic.  As this Court observed,
18  public health measures like the city moratorium were unprecedented
19  at that time.  The contract at issue here, however, was allegedly
20  executed on September 1, 2020, well into the pandemic and well
21  after the widespread adoption of eviction moratoria in the greater
22  Los Angeles area.  Indeed, as Plaintiff here acknowledges, the City
23  of Lawndale, where Plaintiff's property is located, implemented its
24  own residential and commercial eviction moratorium as early as
25  April 2020.  See
26  https://lawndaleca.hosted.civiclive.com/common/pages/DisplayFile.as
27  px?itemId=17310525.  Regardless whether Plaintiff's tenant took the
28  steps necessary to qualify for relief under Lawndale's eviction

1  moratorium, Plaintiff was on notice that regulations unheard of

2  prior to the pandemic might, and indeed already did, apply.

3      The FAC itself alleges that the County first implemented its

4  Moratorium even earlier, in March 2020.  (FAC ¶ 18.)  Although

5  Plaintiff is correct that the first iteration of the Moratorium did

6  not apply to his property, as it only covered unincorporated areas

7  of Los Angeles County, the question is not whether Plaintiff beat

8  the Board of Supervisors to the punch.  Rather, the question is

9  whether Plaintiff had a reasonable expectation in September 2020

10 that his new contractual relationship would, notwithstanding the

11 continuing public health crisis and widespread adoption of COVID-

12 related landlord-tenant regulations throughout the area, remain

13 insulated from similar measures.  Even at this stage of

14 proceedings, the answer is no.  As stated above, Plaintiff's own

15 city had already implemented a commercial eviction moratorium,

16 which was itself preceded by the County Moratorium.  Although the

17 County Moratorium initially applied only to unincorporated areas of

18 Los Angeles County, Lawndale, where Plaintiff's property is

19 located, is immediately adjacent to an unincorporated area, the

20 border of which lies less than one mile from Plaintiff's Artesia

21 Boulevard property.  <u>See</u>

22 https://lacounty.maps.arcgis.com/apps/webappviewer/index.html?id=18

23 1e4d122b564303bb775632dfaf076d .

24     Although these realities alone were sufficient to notify

25 Plaintiff that his property too, might become subject to further

26 COVID-related restrictions, any uncertainty on that front was

27 dispelled before Plaintiff ever executed the September 1 lease.  In

28 May 2020, County Supervisors Kuehl and Solis moved to extend the

1   Moratorium to incorporated cities within Los Angeles County that

2   did not provide eviction protections.  <u>See</u> Ninth Circuit Court of

3   Appeals No. 22-55480, ECF 25 (County's Request for Judicial Notice)

4   at RJN 26.[6]  Even though that proposed extension might not have

5   affected Plaintiff, the motion included a provision that the

6   moratorium be reevaluated every 30 days "to provide further

7   extensions."  <u>Id.</u> at RJN 27.  Indeed, the extension at issue here

8   was then proposed in July 2020, when County Supervisors Kuehl and

9   Solis advised that "the County's eviction protections should be

10  established as the baseline for all incorporated cities within Los

11  Angeles County even in cities that have local eviction moratoria,"

12  and made a motion to extend the Moratorium accordingly.  <u>Id.</u> at RJN

13  33-34.  Although such an extension was not adopted at that time,

14  Supervisors Solis and Kuehl later explained that the extension of

15  the Moratorium to incorporated areas was only delayed to September

16  1 to allow the Board to consider further reports from the

17  Department of Consumer and Business Affairs.  <u>Id.</u> at RJN 47.  But

18  even if the Board did not actually implement the extension until

19  just after Plaintiff executed the new lease, it was already

20  apparent prior to September 1 that such an extension was possible,

21  if not likely.

22      Under these circumstances, Plaintiff cannot plausibly allege

23  that the Moratorium challenged here took him by surprise or

24  interfered with any reasonable expectation as to regulation, or

25  lack thereof, of his landlord-tenant relationship.  Accordingly,

26

27  _____

28      [6] Plaintiff himself also cites to these documents.  (Supp.
    Opp. at 7 n.6, 8 n.8.)

1  Plaintiff cannot adequately plead that the Moratorium substantially

2  impaired a contractual relationship, and his claim fails.[7]

3  **IV.   Conclusion**

4       For the reasons stated above, the County's Motion to Dismiss

5  is GRANTED.  Plaintiff's Complaint is DISMISSED, with prejudice.

6

7

8  IT IS SO ORDERED.

9

10

11  Dated: MAY 1, 2024

HON. DEAN D. PREGERSON

United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       [7] The court therefore stops at step one, without reaching the
question whether the Moratorium appropriately and reasonably

28  advances a significant and legitimate public purpose.  Sveen, 584
U.S. at 819.